[No. 16355.    Department One.    March 28, 1921.]

THE STATE OF WASHINGTON, *on the Relation of Andrew Marmo, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents*.[1]

INFANTS (4)—PROTECTION—PROCEEDINGS AFFECTING CUSTODY—JURISDICTION OF JUVENILE COURTS. Jurisdiction of the juvenile court over a minor child ceases when, by subsequent decree of the superior court in divorce proceedings, the child is awarded to one of the parents.

DIVORCE (104)—INFANTS (4)—CUSTODY AND CONTROL—MODIFICATION OF DECREE—JURISDICTION. Where a decree in divorce proceedings was modified so as to give the custody of the children to the father instead of the mother as originally awarded, the court was without power to further adjudge that its decree should not be construed as abridging the jurisdiction of the juvenile court to make orders from time to time touching the welfare of the female child which had been theretofore made a ward of the juvenile court.

Application filed in the supreme court February 16, 1921, for a writ of prohibition to the juvenile court of King county, Dykeman, J., to prohibit the court from proceeding with a cause.    Granted.

*Egan & Moriarty* and *Remann & Gordon*, for relator.

*Malcolm Douglas* and *John D. Carmody*, for respondents.

BRIDGES, J.—In 1916 Andrew Marmo and his wife, Helen Marmo, with their two minor children, Julia and Frank, lived together at Great Falls, Montana. During

[1]Reported in 196 Pac. 577.

the early part of that year, Mrs. Marmo left home and
came to the city of Spokane, in this state, where she
undertook to establish a residence. Later in that year,
in the superior court of Spokane county, she instituted
suit for divorce against her husband, wherein she also
sought the custody of the two children. Mr. Marmo
did not appear in that action, and the result was that
a decree was entered granting the divorce and giving
the care, custody and control of the two children to
Mrs. Marmo. She did not, however, for some years
afterwards, undertake to obtain possession of the chil-
dren, and she paid very little, if any, attention to them
during those years. Subsequent to the decree of di-
vorce, she re-married and moved to Seattle, where she
and her second husband continue to reside.

Mr. Marmo had the care, custody and control of the
children during this interval. In April, 1918, he moved
to Tacoma, Pierce county, in this state, bringing with
him the two children, and in that city he established
a home for himself and them and continues to reside
there. Not until March, 1919, did Mrs. Marmo under-
take to get possession of either of the children. Dur-
ing that month, she went to the home of Mr. Marmo
in Tacoma and forcibly took therefrom the child Julia,
and carried her to her home in Seattle. In so doing
she pretended to act by virtue of her rights acquired
under the decree of divorce. At once after learning
that the child had been taken by the mother, Mr. Marmo
filed a petition with the juvenile court in King county,
whereby he sought to have Julia taken from the mother
and made a ward of that court. As a result of this pro-
ceeding, the child became such ward.

At about the same time, Mr. Marmo commenced a
proceeding in the original divorce action in Spokane
county to have the decree therein so modified as to give

him the care, custody and control of the two children. By stipulation of all parties interested, it was agreed that Judge King Dykeman, of King county, should sit as a judge of the Spokane court, sitting in Seattle, for the purpose of hearing the petition for modification of the divorce decree, and that the testimony in that case should be considered by Judge Dykeman, as juvenile judge of King county. After what appears to have been a full hearing, the Spokane court found, among other things, that Mr. Marmo was an entirely suitable person to have the care, custody and control of the children, and made a judgment modifying the original divorce decree, taking the two children away from Mrs. Marmo and granting them to Mr. Marmo,

"Exclusively, subject, however, to the right of the plaintiff (Mrs. Marmo) to visit said children or either of them for reasonable time and at reasonable intervals and at the places and times and under such regulations as may, from time to time, be provided by the chief probation officer of the juvenile court of Pierce county, Washington."

This decree also contained the following further provision:

"This decree shall not be construed as abridging the jurisdiction and power of the juvenile court of King county, Washington, to make such further orders from time to time touching the welfare of the child Julia Marmo as to said court may seem proper."

On the same day that the foregoing decree was made, the juvenile court of King county made an order permitting the child Julia to be and remain in the custody of Mr. Marmo and to reside with him, "as a ward of the court under probationary supervision by the Pierce county juvenile court, and subject to the further order of this court."

As a result of these various orders, judgments and

decrees, Mr. Marmo took the child with him to Tacoma, where she resided in his care, custody and control until December, 1920, at which time Mrs. Marmo sought to renew the jurisdiction of the King county juvenile court and filed a petition in that proceeding, seeking certain relief with reference to the child. That court then directed Mr. Marmo to appear before it with the child. This he did, and after a hearing, that court entered an order requiring Mr. Marmo to permit the child to visit its mother in Seattle once a week until the further order of the juvenile court. For some reason which the record does not clearly show, this order was not complied with, and the child did not visit her mother as provided. Thereafter, certain officers of the King county juvenile court appeared at the home of Mr. Marmo, in Tacoma, armed with writs authorizing them to take possession of the child and deliver her into the possession of the juvenile court at Seattle. This they did and the child is now in the charge of that court. At the time of taking the child, there was served upon Mr. Marmo a citation requiring him to again appear, at a time designated, before the King county juvenile court, concerning the welfare of the child Julia. Before the time for the hearing on this last proceeding, Mr. Marmo filed a petition in this court, setting out many of the facts heretofore mentioned, and praying for a writ prohibiting the King county juvenile court from taking any further proceeding concerning the welfare of Julia, and requiring her to be delivered into the possession of Mr. Marmo. Judge Dykeman, respondent in this proceeding, answered, and the whole matter is now before us for decision.

If the juvenile court of King county has any jurisdiction of this child, it must be either by virtue of the original jurisdiction acquired in 1919, or by virtue of

the conditions and reservations contained in the judgment modifying the decree of divorce granted by the superior court of Spokane county. We are confident the juvenile court of King county has had no jurisdiction of this child, and that it has not been a ward of that court since the making and entering of the modification decree by the Spokane county court, giving the child exclusively into the care, custody and control of the relator here. When the Spokane county court awarded the child to this relator, all juvenile courts, including that of King county, lost jurisdiction of the child, and thereafter no juvenile court could acquire jurisdiction of it except by new proceedings entered in the proper county, which in this instance would necessarily have been Pierce county. The Spokane county superior court had the first and superior jurisdiction of the child and when, by virtue of its authority, it awarded her to the father, all jurisdiction which had theretofore been acquired by the juvenile court of King county, ceased. While, generally speaking, when a juvenile court once acquires jurisdiction of a child, that jurisdiction is a continuing one, yet it is manifest that such jurisdiction must some time and in some manner cease. When the superior court found the relator was a fit and suitable person to have the child, and made a judgment awarding him the custody of her, at that moment the child ceased to be a dependent or delinquent person, for whose protection the juvenile law was enacted.

That portion of the judgment modifying the original decree of divorce which provided that it should not abridge the jurisdiction and power of the juvenile court of King county, touching the welfare of the child, must be considered as surplusage, because the court had no power to make such an order.

Let a writ be issued herein, prohibiting the juvenile court of King county from continuing to exercise any jurisdiction over this child and requiring that court to surrender her to the relator here.

PARKER, C. J., MACKINTOSH, FULLERTON, AND HOLCOMB, JJ., concur.